# EXHIBIT "A"

- 1 -

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

EMIGDIO ANTONIO DE GRACIA,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.
d/b/a ROYAL CARIBBEAN GROUP

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff sues Defendant and, in support thereof, alleges:

### PRELIMINARY ALLEGATIONS

1. This is a Complaint for Damages in excess of $50,000.00 (fifty thousand dollars), exclusive of costs and interest.

2. Plaintiff, EMIGDIO ANTONIO DE GRACIA, is a citizen of Panama.

3. Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP (hereinafter "Defendant" or "Royal Caribbean"), is a foreign entity which maintains its principal place of business and worldwide headquarters in Miami, Florida.

4. Admiral Management Inc. is incorporated in a foreign state and maintains its principal place of business in Broward County, Florida. Admiral Management Inc. also does business as and through "Admiral Management International, Inc." Admiral Management International, Inc. is a Florida-registered business entity with its principal places of business at 5350 W Hillsboro

Blvd, Ste. 106, Coconut Creek, Florida, 33073 and/or 4758 W. Commercial Blvd., Tamarac, FL 33319.

5. Defendant, at all times material hereto, personally or through an agent(s):

   a. Operated, conducted, engaged in or carried on a business venture in the state of Florida and/or Miami-Dade County, or had an office or agency in Florida and/or Miami-Dade County;

   b. Was engaged in substantial business activity within the State of Florida;

   c. Operated cruise vessels within the waters of this State;

   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   e. The acts of the Defendant set out in this Complaint occurred in whole or in part within the State of Florida.

6. Defendant is subject to the jurisdiction of the courts within the State of Florida.

7. At all times material to the events which give rise to Plaintiff's claims against Defendant, Royal Caribbean Cruises Ltd. co-owned and co-operated CocoCay (a/k/a Little Stirrup Cay), a private island in the Bahamas, and Admiral Management Inc. co-owned and co-operated same.

8. At all times material to the events which give rise to Plaintiff's claims against Defendant, Royal Caribbean Cruises Ltd., Admiral Management Inc., and Admiral Management International, Inc., were engaged in a joint venture to build, construct, improve and operate CocoCay; making each other jointly and severally liable for the negligent acts of the others.

9. In support thereof, Royal Caribbean Cruises Ltd., Admiral Management Inc., Admiral Management International, Inc. had: i) an intention to create a joint venture to build, construct, improve and operate CocoCay; ii) shared joint control or right of control in furtherance of same; iii) shared a joint proprietary interest in the development and operation of CocoCay; iv) shared

profits in in the development and operation of CocoCay; and v) shared losses associated with the development and operation of CocoCay. For example:

    a. Oliver Colimon executed Plaintiff's employment agreement as "HR Representative" on behalf of Admiral Management Inc.; at that time, however, Oliver Colimon was directly employed by Royal Caribbean Cruises Ltd. as "HR Manager Private Destinations".

    b. While working in CocoCay, Plaintiff primarily took work orders and instructions from Royal Caribbean representatives, including Susan Richardson, Royal Caribbean Cruises Ltd.'s Private Destinations General Manager.

    c. A Royal Caribbean payroll representative paid Plaintiff for his work while he worked on CocoCay, and when so doing, Royal Caribbean provided Plaintiff his wages on Royal Caribbean's "Salary at Sea" card.

10. From 2005 to 2019, Plaintiff was directly employed by Royal Caribbean Cruises Ltd. as a shipboard Inventory Manager. In that capacity and during that time, Plaintiff worked only for Royal Caribbean aboard its fleet of vessels. During that time, Plaintiff worked aboard approximately fifteen to twenty Royal Caribbean cruise vessels including, but not limited to: *Monarch of the Seas, Splendor of the Seas, Vision of the Seas, Grandeur of the Seas*, *Voyager of the Seas, Brilliance of the Seas,* and *Majesty of the Seas.*

11. While working as a shipboard Inventory Manager during that time, Plaintiff lived and worked aboard Royal Caribbean's cruise vessels while Royal Caribbean operated the cruise vessels in navigable waters, and Plaintiff contributed to the function and mission of Royal Caribbean's cruise vessels in that Plaintiff's job duties primarily consisted of ensuring sufficient inventory aboard the vessel (*i.e.* food, beverage, and merchandise) for Royal Caribbean's passengers.

12. At all times material to the events which give rise to Plaintiff's claims against Defendant, Plaintiff was a Jones Act seaman as that term is contemplated under the Jones Act, 46 U.S.C. § 30104 and the General Maritime Law of the United States, vis-à-vis Royal Caribbean Cruises Ltd.

- 3 -

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

*Chandris, Inc. v. Latsis,* 515 U.S. 347, 363 (1995) ("In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ "a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.")

13. Plaintiff held and holds Jones Act seaman status vis-à-vis Royal Caribbean by virtue of Royal Caribbean's exercise of control over Plaintiff and his work while in CocoCay. *Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir. 1975); *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447 (5th Cir. 1980).

14. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104 and the General Maritime Law of the United States.

15. At all times material, Royal Caribbean Cruises Ltd. owned, operated, managed, maintained, and/or controlled the vessels, *Anthem of the Seas* and *Enchantment of the Seas* (the "vessels").

16. At all times material, Royal Caribbean Cruises Ltd. operated the vessels in navigable waters.

17. At all times material, Royal Caribbean Cruises Ltd. employed Plaintiff as an Inventory Manager in CocoCay as it controlled his work in CocoCay; for example, while working in CocoCay, Plaintiff received work-related instructions from Susan Richardson on behalf of Royal Caribbean with respect to inventory-related issues and logistics in connection with Royal Caribbean's cruise vessels that called at port in CocoCay.

**FACTS COMMON TO ALL COUNTS**

18. In early February 2019, a Royal Caribbean representative reached out to Plaintiff to discuss Plaintiff working a short-term Inventory Manager position for Royal Caribbean in CocoCay; as

opposed to working an Inventory Manager position aboard Royal Caribbean cruises vessels upon which Plaintiff had worked for the preceding 14 years.

19. In early February 2019, another Royal Caribbean representative, Susan Richardson, reached out to Plaintiff to further discuss the Inventory Manager position in CocoCay. Plaintiff interviewed for the position with Susan Richardson.

20. In mid-February 2019, another Royal Caribbean representative, Oliver Colimon, reached out to Plaintiff to further discuss the Inventory Manager position in CocoCay. Oliver Colimon offered Plaintiff the position, and he accepted it.

21. In early March 2019, Plaintiff arrived at CocoCay to begin work as an Inventory Manager. Plaintiff was told his immediate supervisor on the island would be Susan Richardson, who was working for Royal Caribbean Cruises Ltd. on CocoCay.

22. On his first day of work in CocoCay, Plaintiff began to feel flu-like symptoms. Plaintiff first reported his symptoms to Susan Richardson, and Plaintiff asked her if he could be treated by one of Royal Caribbean's doctors. In response, Susan Richardson informed Plaintiff that Royal Caribbean did not have a medical facility on CocoCay, and that he should instead take Ibuprofen and Aspirin from a First Aid cabinet within the residential housing area for Royal Caribbean's employees on the island.

23. In response, Plaintiff complied with Susan Richardson's instructions, located the Ibuprofen and Aspirin in the First Aid cabinet, and took the medication as Susan Richardson instructed.

24. A few days later, Plaintiff was still not feeling well, and in fact, felt worse than on his first day of work. Plaintiff then asked Troy, Royal Caribbean's Director of Operations in CocoCay, whether he could be seen by a doctor.

25. Royal Caribbean eventually arranged for Plaintiff to be transported to Great Harbour Cay, an island that neighbored CocoCay and where there was a medical facility.

26. At the Great Harbour Cay Medical Center, a nurse check Plaintiff's vitals, including his blood pressure and temperature. The nurse remarked to Plaintiff that his blood pressure was extremely high. The nurse then diagnosed Plaintiff with dehydration, gave Plaintiff IV fluids, and discharged him from the Medical Center. Plaintiff was never examined by a doctor; only a nurse.

27. Thereafter, Plaintiff returned to CocoCay. He still did not feel well, and informed Susan Richardson of that fact. Notwithstanding, Susan Richardson demanded that Plaintiff return to his job duties, despite his poor health. Plaintiff complied with Susan Richardson's request and continued to work. As a result, Plaintiff's health deteriorated while he worked, could not sufficiently rest and recover, and while he did not receive a proper diagnosis for his medical condition or proper medical treatment by a doctor.

28. In mid-March 2019, Plaintiff again informed Troy, Royal Caribbean's Director of Operations in CocoCay, that he was not feeling well and needed medical attention. In response, Troy instructed Plaintiff to visit the medical center aboard the aboard the *Anthem of the Seas*, while it was docked at port in CocoCay. Plaintiff complied, boarded the *Anthem of the Seas*, and asked to be seen by a doctor for diagnosis and medical treatment for the malaise he had experienced since he arrived to CocoCay earlier in the month. The shipboard nurse informed Plaintiff that no shipboard doctor could treat him, and instructed Plaintiff to go to the First Aid shack in CocoCay to be seen by a doctor and for medication.

29. When Plaintiff went to the First Aid shack in CocoCay, a nurse was stationed there, but advised Plaintiff that the doctor on call was at that beach, and could only be summoned to the First Aid shack for emergencies. The nurse in CocoCay listened to Plaintiff's ongoing complaints, took

his blood pressure and temperature, and remarked to Plaintiff that both of his vitals were above normal limits. Notwithstanding, Royal Caribbean's nurse decided that Plaintiff's condition was not an emergency, did not summon the doctor from the beach, and instead, instructed Plaintiff to take Ibuprofen. Plaintiff complied with this medical advice and returned to work.

30. In April 2019, Plaintiff fainted while working in CocoCay. Plaintiff was then taken aboard Royal Caribbean's cruise vessel, the *Enchantment of the Seas*, which was docked at port in CocoCay at that time, for medical treatment. Aboard the vessel Royal Caribbean's doctors took Plaintiff's blood pressure, tested Plaintiff's blood, and discovered that his blood pressure, creatine and blood urea nitrogen (BUN) levels were critically elevated to dangerous levels.

31. These are basic tests Defendant, Royal Caribbean could have requested or had done at any time prior when Plaintiff requested medical care on CocoCay or aboard Royal Caribbean's cruise vessels.

32. In response to Plaintiff's dangerously elevated blood pressure and blood test results, Royal Caribbean medically evacuated Plaintiff from CocoCay and delivered him to a hospital in Cape Canaveral, Florida.

33. In the Cape Canaveral Hospital, Plaintiff was diagnosed with acute interstitial nephritis, most likely induced by non-steroidal anti-inflammatory (NSAID) medication, such as Ibuprofen and Aspirin. It was noted at that time that Plaintiff was suffering from kidney and cardiovascular damage and related injuries.

34. Plaintiff's high temperature and elevated/uncontrollable blood pressure for the preceding weeks should have signaled to any reasonably competent medical professional that Plaintiff was dealing with this kidney-related issue; or at the very least, signaled to any reasonably competent

medical professional that further tests were needed to properly diagnose and treat Plaintiff's medical condition and related injuries.

35. Following this diagnosis, Defendant, Royal Caribbean selected several doctors to treat Plaintiff's medical condition and related injuries. However, the treatment rendered by those doctors fell below the standard of acceptable medical care; for example, those doctors prescribed Plaintiff improper medication to address his acute interstitial nephritis and related injuries; prescribed him a dangerous medication regimen for too long of a time without safely balancing the resulting harm it would and did cause Plaintiff; and prematurely declared Plaintiff at maximum medical improvement which, in effect, prevented Plaintiff from receiving proper medical treatment and further aggravated his medical condition and related injuries.

## COUNT I – JONES ACT NEGLIGENCE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-five (35) above as though originally alleged herein, and further alleges:

36. At all times material hereto, it was the duty of Defendant to provide Plaintiff with a reasonably safe place to work.

37. At all times material hereto, Defendant, its joint venturers, agents, servants, and/or employees acts and/or omissions caused, contributed and/or played a substantial part in bringing about Plaintiff's injuries for reasons that include, but are not limited to, the following:

   a. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

   b. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition and related injuries when he presented to Defendant, its joint venturers, their shoreside medical professionals, their shipboard medical professionals, and/or their agents, and as Plaintiff continued to complain as his medical condition and related injuries became aggravated; and/or

   c. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside; and/or

   d. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

   e. Failure to equip CocoCay and/or provide Plaintiff with an adequate medical facility, including a sufficient number of medical doctors and nurses, in light of Defendant's conduct in assigning Plaintiff to work on the isolated island; and/or

   f. Failure to use available medical equipment and tests on CocoCay and/or aboard Royal Caribbean's cruise vessels to properly and properly diagnose Plaintiff's condition and treat him for same; and/or

   g. Failure to properly medically manage Plaintiff's medical care, shipboard and shoreside, after Plaintiff's medical condition and related injuries manifested; and/or

   h. Undertaking to provide Plaintiff proper medical care, including diagnosis and treatment, but failing to reasonably provide same; and/or

   i. Failure to timely medically evacuate and/or repatriate Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

   j. Dangerously overworking Plaintiff, despite his poor and deteriorating health, to the point of fatigue and further injury.

38. All of the breaches outlined above caused, contributed and/or played a substantial part in bringing about Plaintiff's injuries.

39. At all times material hereto, Defendant knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiff's injuries and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them.

40. As a result of Defendant's negligence, Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability,

incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. Plaintiff's injuries and damages are permanent or continuing in nature, and he will suffer the losses and impairments in the future.

**WHEREFORE,** Plaintiff demands all damages recoverable by law.

### COUNT II – GENERAL NEGLIGENCE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-five (35) above as though originally alleged herein, and further alleges:

41. At all times material hereto, it was the duty of Defendant to provide Plaintiff with a reasonably safe place to work.

42. At all times material hereto, Defendant, its joint venturers, agents, servants, and/or employees acts and/or omissions caused, contributed and/or played a substantial part in bringing about Plaintiff's injuries for reasons that include, but are not limited to, the following:

   a. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

   b. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition and related injuries when he presented to Defendant, its joint venturers, their shoreside medical professionals, their shipboard medical professionals, and/or their agents, and as Plaintiff continued to complain as his medical condition and related injuries became aggravated; and/or

   c. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside; and/or

   d. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

   e. Failure to equip CocoCay and/or provide Plaintiff with an adequate medical facility, including a sufficient number of medical doctors and nurses, in light of Defendant's conduct in assigning Plaintiff to work on the isolated island; and/or

  f. Failure to use available medical equipment and tests on CocoCay and/or aboard Royal Caribbean's cruise vessels to properly and properly diagnose Plaintiff's condition and treat him for same; and/or

  g. Failure to properly medically manage Plaintiff's medical care, shipboard and shoreside, after Plaintiff's medical condition and related injuries manifested; and/or

  h. Undertaking to provide Plaintiff proper medical care, including diagnosis and treatment, but failing to reasonably provide same; and/or

  i. Failure to timely medically evacuate and/or repatriate Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

  j. Dangerously overworking Plaintiff, despite his poor and deteriorating health, to the point of fatigue and further injury.

43. All of the breaches outlined above caused, contributed and/or played a substantial part in bringing about Plaintiff's injuries.

44. At all times material hereto, Defendant knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiff's injuries and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them.

45. As a result of Defendant's negligence, Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. Plaintiff's injuries and damages are permanent or continuing in nature, and he will suffer the losses and impairments in the future.

**WHEREFORE,** Plaintiff demands judgment in her favor for all damages recoverable against Defendant, plus costs, interest, any other relief this Court deems just and proper.

**COUNT III – FAILURE TO PROVIDE MAINTENANCE AND CURE**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-five (35) above as though originally alleged herein, and further alleges:

46. Under the General Maritime Law, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant, his employer, until he is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance and cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer. In addition, an MMI declaration must be unequivocal, and if not, any doubts or controversy regarding whether the seaman is at MMI must be resolved in the seaman's favor.

47. To date, Plaintiff has not reached MMI and is therefore entitled to receive from Defendant medical treatment from physicians of his choice and daily maintenance payments.

48. At all times material hereto, Defendant willfully and callously delayed, failed and/or refused to provide Plaintiff with his full entitlement to maintenance and cure, and/or Defendant willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of maintenance he requires to reasonably support himself as he convalesces, such that Plaintiff has become obligated seek the undersigned's legal services and pay the undersigned a reasonable attorney's fee.

49. At all times material hereto, Defendant's failure to provide Plaintiff the entire maintenance and cure he is due has been willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's right as a seaman. As such, Plaintiff would be entitled to recover his

attorneys' fees from Defendant under the General Maritime Law of the United States and potentially punitive damages.

50. At all times material hereto, Defendant's unreasonable and/or callous failure to pay or provide Plaintiff with maintenance and cure aggravated Plaintiff's condition and caused him to suffer additional compensatory damages, including, but not limited to, the aggravation of his physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and into the future.

**WHEREFORE,** Plaintiff demands all damages recoverable by law.

## COUNT IV – FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-five (35) above as though originally alleged herein, and further alleges:

51. At all times material hereto, Defendant had an absolute and non-delegable duty to provide Plaintiff with prompt, proper, and adequate medical care.

52. At all times material hereto, Defendant, through its joint venturers, employees, agents, shipboard and/or shoreside physicians and/or nurses, negligently failed to provide Plaintiff with prompt, proper, and adequate medical care. Defendant's acts and/or omissions, as outlined below, caused, contributed and/or played a substantial part in bringing about Plaintiff's injuries and damages and/or aggravation of same. Defendant's negligent acts/omissions include, but were limited to:

    a. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

b. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition and related injuries when he presented to Defendant, its joint venturers, their shoreside medical professionals, their shipboard medical professionals, and/or their agents, and as Plaintiff continued to complain as his medical condition and related injuries became aggravated; and/or

c. Failure to provide Plaintiff with prompt, proper, and adequate medical care shipboard and shoreside; and/or

d. Failure to select, retain, approve and/or utilize competent, skilled and properly trained medical care providers shipboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

e. Failure to equip CocoCay and/or provide Plaintiff with an adequate medical facility, including a sufficient number of medical doctors and nurses, in light of Defendant's conduct in assigning Plaintiff to work on the isolated island; and/or

f. Failure to use available medical equipment and tests on CocoCay and/or aboard Royal Caribbean's cruise vessels to properly and properly diagnose Plaintiff's condition and treat him for same; and/or

g. Failure to properly medically manage Plaintiff's medical care, shipboard and shoreside, after Plaintiff's medical condition and related injuries manifested; and/or

h. Undertaking to provide Plaintiff proper medical care, including diagnosis and treatment, but failing to reasonably provide same; and/or

i. Failure to timely medically evacuate and/or repatriate Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

j. Denying Plaintiff the ability to seek prompt, proper and/or adequate medical treatment shipboard and/or shoreside; and/or

k. Preventing Plaintiff from seeking prompt, proper and/or adequate medical treatment shipboard and/or shoreside; and/or

l. Prematurely terminating Plaintiff's medical care.

53. As a result of Defendant's negligence, Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability,

incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. Plaintiff's injuries and damages are permanent or continuing in nature, and he will suffer the losses and impairments in the future.

54. This Count is alleged separately from Jones Act negligence asserted above pursuant to *Joyce v. Atlantic Richfield Company*, 651 F. 2d 676 (10th Cir. 1981), which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

**WHEREFORE,** Plaintiff demands all damages recoverable by law.

### COUNT V – UNSEAWORTHINESS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-five (35) above as though originally alleged herein, and further alleges:

55. At all times material hereto, Defendant had an absolute and non-delegable duty to maintain the vessels Plaintiff served in a seaworthy condition.

56. At all times material hereto, Defendant's vessels were unseaworthy and such unseaworthiness was a legal cause of injury and damage to the Plaintiff by reasons that include, but are not limited to, the following:

  a. The vessels which Plaintiff served were not reasonably fit for their intended purpose; and/or

  b. The vessels' crew, including Defendant's shipboard doctors and nurses, were not properly trained, instructed and/or supervised; and/or

  c. Defendant created an unsafe shipboard working environment; and/or

  d. The vessels did not carry a fit crew; and/or

  e. The vessels' medical personnel were not properly trained, monitored and/or supervised to promptly, properly, and adequately diagnose and treat Plaintiff's

medical condition and/or injuries when he presented to the vessels' medical center and as he continued to complain as his condition/injuries became aggravated; and/or

f. The vessels failed to carry and utilize properly trained medical providers to medically manage Plaintiff's medical care after he was injured.

57. As a result of the unseaworthiness of the vessel, Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. Plaintiff's injuries and damages are permanent or continuing in nature, and he will suffer the losses and impairments in the future.

**WHEREFORE,** Plaintiff demands all damages recoverable by law

Dated: May 27, 2021

    Respectfully submitted,

**LIPCON, MARGULIES
& WINKLEMAN, P.A.**
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ L. Alex Perez*
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
mwinkleman@lipcon.com
**JACQUELINE GARCELL**
Florida Bar No. 104358
jgarcell@lipcon.com
**L. ALEX PEREZ**
Florida Bar No. 125452

aperez@lipcon.com

- 17 -
Lipcon, Margulies & Winkleman, P.A.